UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rick L. McDeid,                                                    Civ. No.: 04-11 (JNE/FLN)

    Plaintiff,

v.                                                                 **REPORT AND RECOMMENDATION**

State of Minnesota, et al.,

    Defendants.

_____

Ricky L. McDeid, *Pro Se*
David A Rowley, Barbara Berg Windels, Office of the Attorney General, for Defendants

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Defendants' Motion for Summary Judgment [#39]. This matter has been referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. section 636 and Local Rule 72.1(c). Plaintiff Ricky L. McDeid, a patient in the Minnesota Sex Offender Program ("Program"), brings this action pursuant to 42 U.S.C. § 1983, alleging Defendants violated his constitutional rights under the Fourth and Fourteenth Amendments when they conducted strip searches of his person.[1,2] For the reasons

---

[1] Plaintiff asserts claims against: Kevin Goodno, the Commissioner of the Minnesota Department of Human Services ("DHS"); Michael Tessneer, Chief Executive Officer of the Minnesota State Operated Services Division of DHS; Larry TeBrake, Acting Site Director of the Program in St. Peter; Rick Harry, former Chief Operating Officer of the Program; Anita Schlank, former clinical director of the Program; Stephen Huot, clinical director of the Program; Joanne Fairfield, former assistant clinical director of the Program; and Tom Lundquist, Paula Johnson, Jerry Zimmerman, Kirk Davis, Randy Valentine, Barry Anderson, John Mandernach, and Thorn Torgerson, all Program employees.

[2] Other Program patients have also filed suit, challenging the same searches at issue in this case. See Benson v. Minnesota, 04-165 (ADM/FLN); Nelson v. Minnesota, 04-192 (MJD/JGL); Jack v. Minnesota, 04-106 (JNE/AJB); Brown v. Minnesota, 04-193 (JRT/AJB); Clouthier v. Minnesota, 04-144 (PAM/RLE). Plaintiffs in these cases claim violation of Fourth and Fourteenth Amendments. Although each plaintiff names a different set of individual defendants, the arguments contained in the motion pleadings submitted by both sides are substantially similar. Defendants' motions for summary judgment were granted in Clouthier, Jack, and Brown.

which follow, the Court recommends that Defendants' Motion be granted.

## I. FINDINGS OF FACT

Plaintiff Ricky L. McDeid is involuntarily committed as a sexual psychopathic personality and a sexually dangerous person to the Minnesota Sex Offender Program in Moose Lake, Minnesota. The Program provides treatment to persons committed by the courts as psychopathic personalities, sexual psychopathic personalities, or sexually dangerous persons under the Minnesota Commitment and Treatment Act. Minn. Stat. §§ 246B.01; 253B.02, subds. 18b and 18c. On January 27, 2003, and October 30, 2003, Program employees conducted a facility-wide search that involved searches of the patients' persons and rooms. See Johnson Aff.; TeBrake Aff.; Huot Aff.; Zimmerman Aff. Program officials determined that the searches were necessary because of security concerns. Johnson Aff. ¶¶ 5-28; 30-31.

### A. January 2003 Search

In January 2003, Program employees learned that patients in the Program were possibly in possession of controlled substances. Johnson Aff. ¶¶ 7-9. On January 24, 2003, staff members found a cell phone and drugs in a patient's property bin. Id. at ¶¶ 6-8. Because the bin had been previously searched that day, the employees were concerned that the patients were passing contraband between each other. Id. at ¶ 15.

A patient's possession of controlled substances poses a threat to patients, staff, and the Program's integrity. Id. at ¶¶ 10-11; Huot Aff. ¶ 7. Drug use can exacerbate behavioral problems, trigger a reoffense mechanism, and undermine the treatment milieu. Huot Aff. ¶ 7. In addition, the presence of controlled substances in a secure setting poses risks not found in open society. In secure settings, patients may be persuaded to assist another patient's drug use or distribution of drugs. See

Johnson Aff. ¶¶ 10, 30.  Many patients also assist in hiding contraband during searches.  Id. at ¶10.

In light of these concerns, Defendant Johnson, the Program's security director, determined that the most effective option to detect the contraband items was a search of the entire facility, including unclothed body searches of patients.  See Johnson Aff. at ¶¶ 8, 15.  Defendant Harry, former Chief Operating Officer of the Program, authorized the recommended search.  See Harry Aff. ¶ 8.  On January 27, 2003, Program staff conducted a facility-wide search of all patients and their rooms.  Id.

### B.    October 2003 Search

In October 2003, Johnson received reliable information that one or more contraband cell phones were in patients' possession inside the facility.  Johnson Aff. ¶ 17.  On October 28, 2003, a patient gave a Program staff member a cell phone case he had found in a hallway accessible to patients, staff and some visitors throughout the day.  Id.  Staff members reviewed the surveillance video of the hallway, but were unable to discern which patient may have had the cell phone.  Id. at ¶ 19.  Cell phones, which have internet and digital photographic capabilities, are considered contraband at the facility because patients could use them to contact potential or past victims, to secure pornography, and to perpetrate criminal activities.  Id. at ¶¶ 12-14.  Defendant Johnson believed facility-wide room and unclothed body searches were necessary to find the cell phone.  Id. Defendant Larry TeBrake, acting site director of the Program in St. Peter, authorized the recommended search.  See TeBrake Aff. ¶ 3; see also Johnson Aff. ¶ 19.  A cell phone with internet and camera capabilities was discovered on October 30, 2003, in the possession of a patient in the protective isolation unit.  Johnson Aff. at ¶ 21.

### C. Search Protocol

Program staff conducted the searches in January and October 2003 in the same manner. See Johnson Aff. ¶¶ 22-26. Each body search team consisted of two males. The teams were instructed to obtain the patient's consent to the unclothed search, and then take the patient to a private bathroom to conduct the search. After disrobing, one member of the team examined the patient's clothing. The patient was told to run his fingers through his hair, show his armpits and feet bottoms, lift his genitals, and bend over and spread his buttocks. Id. During the search, the two staff members remained five to eight feet away from the patient. The search was entirely visual and staff did not perform cavity searches or even physically touch the patients during the searches. Id. No patients reported any touching. See Zimmerman Aff. ¶ 7.

Plaintiff brought suit pursuant to 42 U.S.C. § 1983, alleging that the searches were unreasonable and deprived him of a liberty interest in violation of the Fourth and Fourteenth Amendments. Defendants move for summary judgment, arguing that Plaintiff's suit is barred by the Eleventh Amendment and because Defendants are entitled to qualified immunity, and that Plaintiff has failed to establish the Defendants violated his rights under the Fourth and Fourteenth Amendments. For reasons discussed below, the Court concludes that Plaintiff's claims against Defendants in their official capacities are barred by the Eleventh Amendment and that the Defendants are entitled to qualified immunity for actions taken in their individual capacities.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standard of Review

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See

Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986). Therefore, summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23. For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party. Id. at 255. Thus, summary judgment is appropriate when the court has viewed the facts and the inferences drawn from those facts, in a light most favorable to the non-moving party, and found no triable issue. See Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995).

### B.     Eleventh Amendment Immunity

The Eleventh Amendment bars Plaintiff's claim to the extent he seeks monetary relief against Defendants in their official capacities. The Eleventh Amendment to the United States Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has interpreted the Eleventh Amendment to prohibit suits in federal court against unconsenting states. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72 (1996). Section 1983 does not override the states' Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332, 342 (1979).

The Eleventh Amendment's immunity encompasses certain actions against state agents and

instrumentalities. <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429 (1997). A suit by a private party seeking to impose a liability which must be paid from the state treasury funds is barred by the Eleventh Amendment. <u>See</u> <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974); <u>Ford Motor Co. v. Department of Treasury</u>, 323 U.S. 459, 464 (1945) ("When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants").

Here, Plaintiff filed suit against employees of the State of Minnesota in their official and individual capacities. Because any compensatory award against Defendants acting in their official capacities would be paid out of the state treasury, the State of Minnesota is the real party in interest. Congress did not abrogate, and the Minnesota Legislature has not waived, Minnesota's Eleventh Amendment immunity concerning the legal claims raised by Plaintiff. <u>See</u> Minn. Stat. § 1.05 (waiving immunity only for certain types of claims not presented here); <u>see also</u> <u>DeGidio v. Perpich</u>, 612 F.Supp. 1383, 1389 (D. Minn. 1985). Accordingly, the Court finds that to the extent Plaintiff seeks monetary relief against Defendants in their official capacities, his action is barred by the Eleventh Amendment, and that portion of the Complaint should be dismissed.

### C. Qualified Immunity

Plaintiff's suit against the Defendants in their individual capacities is barred because the Defendants are entitled to qualified immunity. Qualified immunity shields government officials from suit for official acts if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). When evaluating a qualified immunity claim, a court first determines whether the facts alleged show the officer's conduct violated a constitutional right. <u>Saucier v. Katz</u>, 533 U.S.

194, 201 (2001). If so, the court must decide whether the violated right was clearly established at the time the violation occurred. Id.

A right is clearly established only if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. at 202. See also Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines"). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. Wilson v. Layne, 526 U.S. 603, 614 (1999). Thus, a precedential case need not be on all fours to clearly establish a constitutional violation, but it must be sufficiently analogous to put a reasonable officer on notice that his conduct is unconstitutional. Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002).

Here, Plaintiff claims the searches conducted by Program staff violated his constitutional rights. Even if the Court were to find that the searches did violate the Constitution, Defendants are entitled to qualified immunity because the unlawfulness of the searches is far from apparent.

### 1. The Searches Were Reasonable Under the Fourth Amendment

Plaintiff argues the searches violated his rights under the Fourth Amendment. The Fourth Amendment prohibits only unreasonable searches. Goff v. Nix, 803 F.2d 358, 363 (8th Cir. 1986). In assessing the reasonableness of a search in an institutional setting, the Supreme Court calls for a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it is conducted. Bell v. Wolfish,

441 U.S. 520, 559 (1979).

In <u>Bell</u>, the Supreme Court held that a detention center's policy of conducting visual cavity searches of pretrial detainees after all contact visits was reasonable under the Fourth Amendment. <u>Id.</u> at 588. The Court held that, in light of the serious security issues that exist in a secured facility, and the documented cases in which detainees have attempted to hide money, drugs, weapons and other contraband in body cavities, visual body cavity searches may be conducted on less than probable cause, despite the substantial degree to which such searches invade personal privacy. <u>Id.</u> at 559-60.

### a.     The Reasonableness Test Set Forth in <u>Bell</u> Applies to this Case

Plaintiff argues that the test in <u>Bell</u> does not apply to the searches conducted at Moose Lake. He argues that as an involuntarily committed patient at a state institution, he is a "private citizen with full citizenship." <u>See</u> Pl. Mem. p. 5. He contends the searches at issue here should have been conducted only after a finding of probable cause.

It is true that Plaintiff is not a prisoner. Though the standard of reasonableness to be applied to civilly committed persons has yet to be decided in this District, it is indisputable that the same safety and security concerns that arise during a prisoner's incarceration also arise from Plaintiff's detention in the Program facilities. <u>See</u> <u>Revels v. Vinenz</u>, 382 F.3d 870, 874 (8th Cir. 2004); <u>Andrews v. Neer</u>, 253 F.3d 1052, 1061 (8th Cir. 2001) (excessive force claim brought by involuntarily committed patient evaluated under the same standard as a claim brought by a pretrial detainee); <u>Hince v. O'Keefe</u>, 632 N.W.2d 577, 580 (Minn. 2001) (stating that "conditions of confinement at the Sex Offender Program facilities are similar to those in a prison in that patients have restricted privileges...yet their commitment is not punishment for an offense"). As the Eighth

Circuit noted in <u>Andrews</u>, though the State is not allowed to punish Plaintiff, the State is entitled to hold him in custody. 253 F.3d at 1061. His confinement in a state institution raises concerns similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals within the facility, and the efficiency of the facility's operation. See <u>id.</u>

Plaintiff is neither a free citizen or a convicted inmate, but his lawful detention raises concerns about institutional safety, order and efficiency. Thus, the searches at issue here should be analyzed under the reasonableness test set forth and applied to a pretrial detainee in <u>Bell</u>. That is, the Court must consider the justification for initiating the search, the scope of the intrusion, and the manner and place in which it was conducted. <u>Bell</u>, 441 U.S. at 559.

### b.     The Search Was Reasonable Under <u>Bell</u>

Applying the factors in <u>Bell</u> to the instant case, the Court finds that the searches were reasonable and not violative of the Fourth Amendment. The searches conducted were initiated to address concerns that contraband was being concealed within the facility. The Record shows two separate instances in which contraband was smuggled into the facility and concealed from staff. The security risks generated by the introduction of the contraband is well documented in the Record. The two searches at issue were conducted to address those security concerns and was based on specific, objective facts, that strongly suggested that contraband was being concealed by Program patients. The searches were initiated to address a legitimate safety concern.

Likewise, the scope of the searches was reasonable. Program officials attempted to determine which patient possessed the contraband, but were unable to narrow the number of patients who needed to be searched. Program staff also believed patients were transferring the contraband

to each other. Thus, a facility-wide search was reasonable.

The search was conducted in a reasonable place and manner. The search took place in a private bathroom; Plaintiff was not searched in an inappropriate location. Cf. Nelson v. Dicke, 2002 WL 511449 at *9 (D.Minn.) (body cavity search performed in storage closet); Starks v. City of Minneapolis, 6 F.Supp.2d 1084, 1088 (D. Minn. 1998) (officer accused of on-street strip search); Young v. City of Little Rock, 249 F.3d 730, 736 (8th Cir. 2001) (officer performed strip search in front of six other detainees). Nor does Plaintiff present facts to support an inference that the search was harassing or retaliatory. Cf. Seltzer-Bey v. Delo, 66 F.3d 961, 963 (8th Cir. 1995) (officer performed daily strip searches accompanied by harassing sexual comments); Swain v. Spinney, 117 F.3d 1, 8 (1st Cir. 1993) (officer directed strip search after failed interrogation).

The Court finds that Defendants initiated the searches to address legitimate security concerns, that the scope of the search was reasonable and that the searches were conducted in a reasonable manner. The unclothed body searches did not violate the Plaintiff's Fourth Amendment rights.

Even if the searches violated the Fourth Amendment, Defendants are unquestionably entitled to qualified immunity. Plaintiff cannot show that his right not to be searched was clearly established at the time the violation occurred. Saucier, 533 U.S. at 201. It would not have been clear to a reasonable officer that her conduct in administering or executing the search was unlawful. See id. Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claims on the grounds of qualified immunity.

**2. The Searches Did Not Violate Plaintiff's Rights Under the Fourteenth Amendment**

Defendants are also entitled to qualified immunity on Plaintiff's allegation that the searches

violated his constitutional rights under the Fourteenth Amendment. In <u>Bell</u>, the Court held that pretrial detainees could not be "punished" without being afforded the procedural protections of Due Process. 441 U.S. at 535. The Court explained, however, that not every sanction imposed against a pretrial detainee could be considered a punishment which would give rise to due process concerns. <u>Id.</u> at 539 n. 21. Therefore, "if a particular condition or restriction of a pretrial detainee is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" <u>Smith v. Copeland</u>, 87 F.3d 265, 267 (8th Cir. 1996). <u>See also</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982) (holding that the substantive component of the Fourteenth Amendment's Due Process Clause requires states to provide involuntarily committed patients with conditions of "reasonable safety and freedom from physical restraint").

Here, the Court finds that the strip searches at issue related to the state's interest in maintaining a secure Program facility. That is, the search was related to a legitimate governmental objective, and does not amount to punishment under <u>Smith</u>. <u>See also</u> <u>Goff</u>, 803 F.2d at 358 (dismissing prisoner's claim that routine visual cavity searches violated the Fourteenth Amendment). Plaintiff has failed to articulate a theory or facts that would support a substantive due process claim, and Defendants are entitled to qualified immunity on Plaintiff's Fourteenth Amendment claims.[3]

## III. RECOMMENDATION

---

[3] In his Memorandum in Opposition, Plaintiff argues that Defendants violated his equal protection rights. See Pl. Mem. p. 13-15. He argues that the search policies employed at the Program differ from the policies employed at the Minnesota Security Hospital in St. Peter, Minnesota. The patients at Moose Lake and St. Peter are not similarly situated, and particular disciplinary and security concerns are unique to the respective facilities in light of their predominant populations and the actual physical sites. Moreover, the Equal Protection clause may not be used to compel institution administrators to adopt the policies of similarly situated institutions. See <u>Bell</u>, 441 U.S. at 362 (individual institutions are given broad discretion in the adoption and execution of polices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security).

Based upon the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion for Summary Judgment [#39] be **GRANTED,** and that Plaintiff's claims be dismissed with prejudice.


DATED: June 23, 2005                                s/ *Franklin L. Noel*
                                                    FRANKLIN L. NOEL
                                                    United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 13, 2005**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.